IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PERCIVAL C. FERRIS,

       Plaintiff,

v.                              CASE NO. 4:14-cv-454-RH-GRJ

JULIE JONES, Secretary Florida
Department of Corrections, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

    This case is before the Court on Defendants Jones, Barnes, Glass, and

Robinson's[1] Motion to Dismiss Plaintiff's Second Amended Complaint.  (Doc. 18.)

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"),

who is proceeding *pro se* in this 42 U.S.C. § 1983 action, has filed a response in

opposition to Defendants' motion, and therefore, the motion is ripe for review.  (Doc.

25.)  For the reasons discussed below, it is recommended that Defendants' motion to

dismiss should be granted.

## I. PLAINTIFF'S ALLEGATIONS

    Plaintiff's claims stem from a disciplinary confinement of 54 days levied against

---

[1] Defendants Beach and Young have been served, but their responses to
Plaintiff's Complaint are not due until June 20, 2015 and June 22, 2015, respectively.
However, because this Report recommends dismissal of Plaintiff's claims for failure to
exhaust and failure to state a claim, it disposes of the claims against Defendants Beach
and Young as well.

him by a hearing committee on August 6, 2013.  Plaintiff alleges that Defendant
Robinson investigated the disciplinary report ("DR") leading to Plaintiff's disciplinary
confinement despite being provided a statement, written by Plaintiff, asserting that
Defendant Robinson did not have statutory authority to place Plaintiff in disciplinary
confinement.  Further, Plaintiff contends that Defendant Glass served as a hearing
officer during Plaintiff's adjudication despite being informed by Plaintiff that she did not
have statutory authority to sentence Plaintiff to disciplinary confinement.  (Doc. 25 at 7-
8.)

Plaintiff alleges that Defendant Beach also served as a hearing officer during
Plaintiff's adjudication despite being informed by Plaintiff that he did not have statutory
authority to sentence Plaintiff to disciplinary confinement.  Plaintiff also asserts that
Defendant Barnes, serving as warden of Columbia Correctional Institution, "turned a
blind eye" to Plaintiff's disciplinary confinement despite being informed in writing by
Plaintiff that the confinement was unlawful.  (Doc. 25 at 8-9.)

Plaintiff further alleges that Defendant Young, Plaintiff's classification officer at
Columbia CI, also "turned a blind eye" to Plaintiff's disciplinary confinement despite
being told in person and in writing by Plaintiff that the confinement was unlawful.
Plaintiff finally alleges that Defendant Crews, then Secretary of the FDOC, also "turned
a blind eye" to Plaintiff's disciplinary confinement despite being informed in writing by
Plaintiff and in person by Plaintiff's family that the confinement was unlawful.  (Doc. 25
at 9-10.)

Plaintiff seeks redress against all Defendants in their official and individual

capacities.  (Doc. 7 at 15.)  Julie Jones replaced Defendant Michael Crews in his official

capacity as Secretary of the FDOC on January 5, 2015.  As such, claims originally filed

against Defendant Crews in his official capacity will be construed as against Julie

Jones, the current Secretary for the FDOC.

Plaintiff claims that the actions of Defendants caused "'atypical and significant'

hardships on Plaintiff" because they deprived him of his "placement in open population,

recreation time, chapel services, visit[ation], canteen and chow hall privileges . . . and

law library services."  Plaintiff asserts that Defendants (1) failed to uphold Article I, §

Eighteen of the Florida Constitution; (2) violated Article Two, § Three of the Florida

Constitution; (3) violated his First, Fourth, Fifth, Sixth, Eighth and Fourteenth

Amendment rights; (4) falsely imprisoned him; and (5) committed a tort against him.

(Doc. 25 at 7-12.)

Plaintiff seeks a declaration that Defendants' actions violated his Constitutional

rights, an injunction to prevent Defendants from continuing to confine Plaintiff,

compensatory, punitive and nominal damages, as well as costs.  (Doc. 25 at 13.)

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Standard

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an

act or omission committed by a person acting under color of state law deprived him of a

right, privilege, or immunity secured by the Constitution or laws of the United States.

*Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot satisfy

these requirements, or fails to provide factual allegations in support of the claims, then

the complaint is subject to dismissal.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief

above the speculative level," and complaint "must contain something more . . . than . . .

a statement of facts that merely creates a suspicion [of] a legally cognizable right of

action"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-84 (2009) (*Twombly* "expounded the

pleading standard for all civil actions," and conclusory allegations that "amount to

nothing more than a formulaic recitation of the elements of a constitutional . . . claim"

are "not entitled to be assumed true," and, to escape dismissal, complaint must allege

facts sufficient to move claims "across the line from conceivable to plausible.").

A *pro se* litigant's allegations are entitled to the benefit of liberal construction.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, a court does not have "license .

. . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an

action."  *GJR Invs. v. Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (*overruled on

other grounds* by *Iqbal).*

**B. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), inmates must exhaust all

available administrative remedies before proceeding in federal court.  42 U.S.C. §

1997e ("[N]o action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner...until such administrative

remedies as available are exhausted.").  The exhaustion provision is a mandatory

precondition to bringing suit in federal court.  *Jones v. Bock*, 549 U.S. 199, 211 (2002).

For the exhaustion requirement to be met under the PLRA, the prisoner must

properly exhaust all available remedies prior to filing suit.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  To properly exhaust all remedies, the prisoner must "take each step within the administrative process" and "file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

The Florida Administrative Code delineates procedures for inmates to file a grievance against their prison or one of its officials. The inmate must first file an informal grievance, with several exceptions, including for grievances of disciplinary action.  Fla. Admin. Code § 33-103.005, § 33-103.006(3)(b).  Disciplinary grievances may be brought initially as formal grievances at the institutional level within 15 days of "[t]he date on which the incident or action being grieved occurred."  Fla. Admin. Code § 33-103.006, § 33-103.011.  If the inmate is dissatisfied with the response to the formal grievance, he may then file an administrative appeal to the Office of the Secretary within 15 days of the date of the response to the formal grievance.  Fla. Admin. Code § 33-103.007, § 33-103.011(1)(c).

When a defendant raises the issue of failure to exhaust in the context of an inmate's 42 U.S.C. § 1983 action, it is treated as a matter in abatement.  *See Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008). The court uses a two part procedure to determine whether a plaintiff has failed to exhaust his remedies.  First, the court must review the defendants' factual allegations along with those contained in the plaintiff's response,

construing conflicting facts in the light most favorable to the plaintiff.  If, after reviewing

these facts, the defendant is entitled to have the complaint dismissed, it will be

dismissed. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  However, if the

complaint is not subject to dismissal, the court must make findings of fact necessary to

resolve the exhaustion issue.  *Id.*

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

In the motion to dismiss, Defendants argue that Plaintiff has failed to exhaust his

administrative remedies prior to filing suit.

As discussed above, proper exhaustion requires not only filing a grievance

concerning the allegations in the Complaint, but filing the grievance in compliance with

the procedures provided by the Florida Department of Corrections.  *Woodford*, 548 U.S.

at 90-91.  In this case, Plaintiff failed to submit grievances concerning the entirety of the

subject matter of his complaint in accordance with the FDOC's grievance system.

The grievances Plaintiff filed concerning his DR failed to exhaust the claims

raised in his complaint, with the exception of claims relating to due process violations.

On August 9, 2013, Plaintiff filed a formal grievance stating that the adjudication at his

disciplinary hearing was a violation of his due process rights.  (Doc. 18-4 at 36.)  This

grievance was denied on August 29, 2013, for lacking merit.  (Doc. 18-4 at 37.)  After

the denial, Plaintiff filed an administrative appeal on September 4, 2013, which was

also denied for being without merit.  (Doc. 18-4 at 31-32.)  However, Plaintiff asserted

due process violations in his formal complaint and appeal filed in August and

September, 2013; thus, Plaintiff has properly exhausted all claims related to due

process violations stemming from the DR in question.  *See Woodford*, 548 U.S. at 90-

91; (Doc. 18-4 at 32-36.)

Plaintiff did not mention the conditions of his confinement or his alleged loss of

general prison privileges in either of the above-mentioned grievances.  Therefore, these

claims are not exhausted.  Plaintiff did not file any other grievances related to the

subject matter of his complaint in 2013, but filed multiple grievances in 2014 relating to

his DR.  To completely exhaust available administrative remedies, prisoners are

required to submit formal disciplinary grievances within 15 days of "[t]he date on which

the incident or action being grieved occurred."  Fla. Admin. Code § 33-103.006, § 33-

103.011.

Plaintiff's later-filed grievances (discussed below) were submitted outside the

proper time frame, and thus failed to exhaust Plaintiff's administrative remedies prior to

filing the instant lawsuit.  On June 6, 2014, Plaintiff filed an informal grievance alleging

that his 2013 DR and confinement constituted violations of the Florida Constitution and

the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

(Doc. 18-4 at 60.)  This grievance was denied for being untimely.  (Doc. 18-4 at 60.)

Plaintiff reasserted the same claims in a formal grievance and then an appeal, which

were both denied for being untimely.  (Doc. 18-4 at 56-60.)

Plaintiff's three grievances filed in 2014 were dated: June 23, 2014, July 10,

2014, and July 24, 2014, all well after the fifteen day period.  In summary, Plaintiff's

2014 grievances failed to exhaust any claims asserted in Plaintiff's complaint because they were untimely and thus deviated from grievance procedure.  *See Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) ("[W]hen a state provides a grievance procedure for its prisoners, [...] an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1982 lawsuit."); (Doc. 18-4 at 56-60).  Accordingly, Plaintiff's claims, with the exception of claims relating to due process violations, should be dismissed because they are unexhausted.

### B. Plaintiff's Florida Constitution Claims

Plaintiff claims that Defendants, in adjudicating his DR and sentencing him to confinement, violated Article I, § Eighteen and Article II, § Three of the Florida Constitution.  (Doc. 9 at 7-12.)  Even assuming that Plaintiff's claims for violations of the Florida Constitution were not due to be dismissed on exhaustion grounds, they should be dismissed for the following reasons.

Article I, § Eighteen of the Florida Constitution bars administrative agencies from prescribing a sentence of imprisonment or "any other penalty except as provided by law." Fla. Const. art. I, § 18.  This provision has been construed as a prohibition of agency created criminal statutes or their equivalent.  *B.H. v. State*, 645 So.2d 987, 993 (Fla. 1994).

The DR that resulted in Plaintiff's disciplinary confinement did not amount to the creation of a criminal offense prohibited by the Florida Constitution.  *See B.H.*, 645

So.2d at 993.  Such a confinement does not constitute a criminal punishment because of the limited rights retained by prisoners after becoming incarcerated.  *See Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Prisoners necessarily lose rights when they become incarcerated, and "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  *See id.* at 485.  Disciplining prison misconduct is part and parcel of a sentence imposed by the courts, rather than a new sentence of imprisonment.

Further, the FDOC did not violate Article 2, § 3 of the Florida Constitution when it disciplined Plaintiff.  Article 2, § Three of the Florida Constitution provides for separation of powers between the "legislative, executive and judicial branches."  Fla. Const. art. II, § 3.  The FDOC is explicitly granted the authority to implement grievance procedures and punish prisoners for disciplinary infractions.  Fla. Stat. § 944.09(1)(c) (2014).  The DR complained of in the instant case is thus authorized despite Plaintiff's contentions of impropriety.  As such, Plaintiff's claims for violations of the Florida Constitution are without merit and should be dismissed.

In his Second Amended Complaint, Plaintiff requests compensatory, punitive, and nominal damages in connection with the alleged violations of the Florida Constitution.  (Doc. 9 at 7-13.)  However, in Florida, "no cause of action exists for money damages for a violation of a state constitutional right."  *Depaola v. Davie*, 872 So.2d 377, 380 (Fla. 4th Dist. Ct. App. 2004); *Bradsheer v. Fla. Dep't of Highway Safety & Motor Vehicles*, 20 So.3d 915, 921 (Fla. 1st Dist. Ct. App. 2009); *Corn v.*

*Lauderdale Lakes*, 816 F.2d 1514, 1519 (11th Dist. 1987).  To the extent that Plaintiff

seeks damages pursuant to these alleged Florida Constitution violations, these claims

are without merit and should be dismissed.  *See Depaola*, 872 So.2d at 380.

### C. Plaintiff's Fourth Amendment Claims

Defendants argue that, even if Plaintiff's Fourth Amendment claims were

exhausted, these claims are deficient because Defendant failed to state a claim for any

Fourth Amendment violations.  To state a claim for relief under 42 U.S.C. § 1983, a

plaintiff must allege that an act or omission committed by a person acting under color of

state law deprived him of a right, privilege, or immunity secured by the Constitution or

laws of the United States.  *Hale*, 50 F.3d at 1582.

Plaintiff's complaint does not allege any facts in support of his claim that his

Fourth Amendment rights were violated.  However, even if Plaintiff had alleged facts in

support of this claim, it should still fail due to the lack of Fourth Amendment protections

recognized for prisoners.  *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Fourth

Amendment proscription against unreasonable searches does not apply within the

confines of the prison cell.").

Accordingly, Plaintiff's claims alleging violations of the Fourth Amendment should

be dismissed.

### D. Plaintiff's Due Process Claims

Defendants argue that Plaintiff has failed to state a claim for any due process

violations because Plaintiff does not have a recognized liberty interest in being free

from disciplinary confinement.  Further, Plaintiff failed to exhaust claims that he suffered

a significant and atypical hardship due to his confinement and temporarily loss of

recreation, chapel, visitation, canteen, chow hall and law library privileges.  Even if

these claims had been exhausted, they should still fail because the temporary loss of

such privileges does not constitute a significant and atypical hardship.

In *Sandin*, the Supreme Court recognized only two instances in which a prisoner

may claim a constitutionally protected liberty interest which implicates constitutional due

process concerns: (1) when actions of prison officials have the effect of altering the

inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life."

When a constitutionally protected liberty interest is implicated, the inmate is entitled to:

(1) written notice of the charges brought against him at least twenty-four hours before

the hearing; (2) an opportunity, when consistent with institutional safety and correctional

goals, to call witnesses and present documentary evidence in his defense; and (3) a

written statement of the factfinder as to the evidence relied upon and the reasons for

the disciplinary action taken.  *Wolff v. McDonnell*, 418 U.S. 539 564-66 (1974).  The

factfinder's decision need only be supported by "some evidence."  *Superintendent,*

*Mass. Corr. Inst. v. Hill*, 474 U.S. 445, 455-56 (1985).

Here, because Plaintiff was not sentenced to a loss of gain time, the disciplinary

sanction does not "have the effect of altering the inmate's term of imprisonment."

*Sandin*, 515 U.S. at 484.  In *Sandin*, the Supreme Court held that there was no state-

created liberty interest in being free from disciplinary confinement for 30 days because such confinement did not present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  The Court made this finding after it compared the evidence of the treatment of inmates in disciplinary and administrative segregation and found that the conditions in the one "mirrored those conditions" in the other.  *Id.* at 486.

In this case, Plaintiff makes the assertion that his DR adjudication resulting in 54 days of disciplinary confinement constituted a violation of his due process.  (Doc. 18-4 at 34.)  As explained above, because Plaintiff had no liberty interest in being free from disciplinary confinement, the due process clause is not implicated.

Even if Plaintiff had exhausted his claims that his temporary loss of recreation, chapel, visitation, canteen, chow hall and law library privileges caused atypical and significant hardships, not just that his DR hearing lacked due process, his claims still should be dismissed for failure to state a claim.  Temporary loss of the privileges withheld from Plaintiff—together or separate—do not constitute significant and atypical hardship.  *See Overton v. Bazzetta*, 539 U.S. 126 (2003) (holding that withdrawal of visitation "is not a dramatic departure from accepted standards for conditions of confinement"); *Samford v. Staples*, 249 F. App'x 1001, 1004 (5th Cir. 2007) (holding that the reduction of "recreation and commissary privileges, assignment of extra duty, temporary solitary confinement, and a reduction in [a prisoner's] classification status does not constitute atypical or significant hardships");  *McKune v. Lile*, 536 U.S. 24, 39

(2002) (holding that the "loss of 'access to vocational, educational, recreational, and rehabilitative programs,'" as well as to canteen privileges and opportunities for prison employment does not implicate a prisoner's liberty interest); *Fiorentino v. Biershbach*, 64 F. App'x 550, 551-52 (7th Cir. 2003) (holding that 60 days of disciplinary confinement including confinement to a "cell nearly 24 hours a day," deprivation of smoking, TV, radio, and telephone privileges, as well as access to the law library and recreational and religious programs did not constitute atypical and significant hardship).

Further, even if Plaintiff had suffered significant and atypical hardship, he fails to state a claim for violation of due process because he never alleged a defect in his disciplinary adjudication.  A 42 U.S.C. § 1983 due process claim requires "proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

In his complaint, Plaintiff only claims that Defendants lacked statutory authority to subject him to disciplinary confinement which, as previously discussed, is not correct. *See* Fla. Stat. § 944.09(1)(c) (2014).  These assertions fail to allege constitutionally inadequate process, and thus do not constitute valid claims for denial of due process. *See Grayden*, 345 F.3d at 1232.

For these reasons, Plaintiff has failed to state any cognizable claims for procedural due process violations.  Accordingly, Plaintiff's due process claims should be dismissed.

**E. Plaintiff's Claim for Denial of Access to Courts**

Plaintiff alleges that his time in disciplinary confinement denied him access to courts.  Defendants argue that, even if Plaintiff's claims had been exhausted, these claims should still fail because they lack merit.

To advance a valid claim for denial of access to the courts, a plaintiff must show actual injury.  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  Further, evidence of deterrence in pursuing a non-frivolous claim must be shown resulting from Defendants' actions.  *Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998).

In this case, Plaintiff has not shown that his disciplinary confinement had a deterrent effect on the cases he was litigating.  Plaintiff offers no factual support in his complaint to support his assertion that he was denied access to the courts.  *See Twombly*, 550 U.S. at 555.  While Plaintiff complains of denial of access to the courts during his disciplinary confinement, he was actively litigating two federal cases during his confinement period: *Ferris v. Crews*, 5:13-cv-56-RS-GRJ (N.D. Fla.) ("Crews"), and *Ferris v. Morales*, 3:13-cv-152-HLA-MCR (M.D. Fla.) ("Morales").  Plaintiff successfully filed a Motion for Temporary Restraining Order, with a memorandum in support of his motion, on August 23, 2013 in Morales—during Plaintiff's disciplinary confinement.  *Morales*, Docs. 10, 11.  Morales is currently pending.  Crews was not dismissed until June 19, 2014, well after Plaintiff's confinement ended.  *Crews*, Doc. 23.  Plaintiff does not allege that he missed any deadlines or suffered any adverse action as a result of Defendants' actions, as required to state a claim.  Accordingly, Plaintiff's claims of

denial of access to the courts should be dismissed.

**F. Plaintiff's Claim for Cruel and Unusual Punishment**

Plaintiff alleges he was subjected to cruel and unusual punishment by being placed in disciplinary confinement.  Assuming *arguendo* Plaintiff's claims were properly exhausted, Plaintiff's claims of cruel and unusual punishment would still fail.  The Eighth Amendment prohibits cruel and unusual punishment, which is characterized as the "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  Only conditions that deny "the minimal civilized measure of life's necessities" implicate an Eighth Amendment violation.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim.").  Additionally, alleged punishment must have "been deliberately administered for a penal or disciplinary purpose."  *Id.* at 300.

In the present case, Plaintiff only claims that his disciplinary confinement constituted cruel and unusual punishment.  However, Plaintiff's allegations are bare assertions, supported by no facts to show that was subjected to "extreme deprivations" or "unnecessary and wanton infliction of pain."  *See Whitley*, 475 U.S. at 320-21; *Hudson*, 503 U.S. at 9.  Furthermore, the Court already has determined Plaintiff's confinement did not rise to the level of atypical and significant hardship, and thus Plaintiff's disciplinary confinement could not satisfy the higher bar set for cruel and unusual punishment claims.  Accordingly, Plaintiff's claims for cruel and unusual

punishment should be dismissed.

### G. Plaintiff's Deliberate Indifference Claims

Plaintiff alleges that Defendants acted with deliberate indifference by placing him in disciplinary confinement.  In addition to being unexhausted, Defendants argue that Plaintiff's deliberate indifference claims should be dismissed for failing to state a claim. Three elements must be satisfied to establish deliberate indifference: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted).  Because Plaintiff does not have a right to be free from disciplinary confinement, such confinement does not pose a risk of serious harm.  *See Sandin*, 515 U.S. at 486.  Plaintiff has not satisfied the first element of his deliberate indifference claim; therefore, it fails.

Furthermore, Plaintiff included no facts in his complaint in support of his claims of deliberate indifference.  Plaintiff does not allege Defendants Robinson, Glass, or Beach had knowledge of the conditions of his confinement, only that they participated in his adjudication.  (Doc. 9 at 7-8.)  Plaintiff also does not allege Defendants Barnes, Young, Crews or Jones had any knowledge of his confinement, only that Plaintiff was placed in disciplinary confinement despite Plaintiff's objections.  (Doc. 9 at 8-10). These allegations are woefully insufficient to state a claim for deliberate indifference because liability under 42 U.S.C. § 1983 cannot be predicated on the denial of grievances.  Accordingly, Plaintiff's claims for deliberate indifference should be

dismissed.

### H. Claims against Defendants Barnes, Crews, and Jones

In the complaint, Plaintiff alleges that Defendants Barnes, Crews, and Jones "turned a blind eye" to the alleged unlawful confinement.  These claims could only advance on a theory of supervisory liability, or denial of grievances.  Even assuming Plaintiff had exhausted these claims, Plaintiff's claims on either theory are deficient for the following reasons.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  To be liable, the claimant must show that the official "personally participate[d]" in the act or there was "causal connection between the actions of [the] supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Because there are no such allegations regarding Defendant Barnes, Crews, or Jones in the complaint, Plaintiff's supervisory liability claims against them should be dismissed.

Plaintiff's claims based on the denial of grievances would also fail.  Where, as here, there is no allegation that Defendants Barnes, Crews, or Jones were personally involved in the alleged constitutional violations and their roles involved only the denial of administrative grievances, they are not liable under § 1983 based on a theory that their failure to act constituted an acquiescence in the alleged unconstitutional conduct.  *McCiskill v. Thompson*, no. 3:10-cv-211-MCR-MD, 2010 WL 4483408, at *4 (N.D. Fla. 2010); *Demm v. Charlotte Cty. Jail Admin. & Staff,* no. 2:04-cv-634-FtM-99SPC, 2007

WL 57772, at *4-5 (M.D. Fla. Jan. 5, 2007).  Accordingly, these claims should be dismissed.

### I. Plaintiff's Claims for Conspiracy

Plaintiff alleges that Defendants Young, Crews, and Jones "acted alone or in concert."  (Doc. 9 at 9-10.)  Defendants argue that even if Plaintiff had exhausted his conspiracy claims, they should still fail because they do not sufficiently allege an agreement between Defendants, and also because the intracorporate conspiracy doctrine defeats a claim of conspiracy.

To establish a prima facie case of § 1983 conspiracy, a plaintiff must show, among other things, that defendants "reached an understanding to violate his rights." *Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citations omitted.)  A claim of conspiracy requires "that Plaintiff provide more than a label or a conclusion," and "Plaintiff cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show that an agreement was made."  *Oden v. Thomas*, 2013 WL 5502963 (M.D. Ala. 2013).

Plaintiff's complaint lacks any facts to support the claim that any understanding was made between Defendants. Rather, Plaintiff relies solely on labels and conclusions to support his claim.  Plaintiff's bare assertion of the existence of a conspiracy fails to assert the material facts necessary to establish a conspiracy between Defendants.

Even if Plaintiff had alleged sufficient facts to state a plausible claim of conspiracy, his claim would be barred by the intracorporate conspiracy doctrine

because all of the Defendants alleged to have engaged in the conspiracy are employees of a single government entity.  *See Detris v. Cole*, 523 F. App'x 612 (11th Cir. 2013) (unpublished) (holding "the intracorporate conspiracy doctrine prohibits a § 1983 claim against law enforcement officers in their individual capacities . . . as well as claims that do not seek to hold the corporate entity itself responsible," citing *Rehberg v. Paulk*, 611 F.3d 828 (11th Cir. 2010)); *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761 (11th Cir. 2000).  *See also Claudio v. Crews*, 2014 WL 1758106 (May 1, 2014), Case No. 5:13-cv-354-MP-EMT (N.D. Fla.) (adopting Report and Recommendation that Plaintiff's conspiracy claims be dismissed pursuant to the intracorporate conspiracy doctrine).

### J. Plaintiff's State Law Tort Claims

Plaintiff claims that Defendants subjected him to false imprisonment by placing him in disciplinary confinement pursuant to his DR; Plaintiff also claims he was subjected to some other unspecified tort.  Defendants argue that, even if Plaintiff had exhausted his claims of false imprisonment and any other unspecified tort claim, these claims should be dismissed.

"False imprisonment is the unlawful restraint of a person against his will . . . ." *Johnson v. Weiner*, 155 Fla. 169, 171 (1944); *Harris v. Lewis State Bank*, 436 So.2d 338, 341 (Fla. 1st Dist. Ct. App. 1983).  A lawful incarceration cannot be the basis for a false imprisonment claim.  *Fisher v. Payne*, 93 Fla. 1083, 1092-93 (1927).[2]

---

[2]A lawful imprisonment is one "authorized by a commitment from a court of competent jurisdiction, regular on its face and valid as such order."  *Id.* at 1093.

As discussed above, Plaintiff bases his false imprisonment claim on the alleged unlawfulness of his DR and subsequent disciplinary confinement.  As previously explained Plaintiff's claims that his DR and disciplinary confinement were unlawful are without merit.  *See Part B.*  In short, becasue the DR and disciplinary confinement were lawful, Plaintiff fails to state a claim for false imprisonment.  *See Fisher*, 93 Fla. At 1092-93.

Plaintiff claims to have been the victim of a tort perpetrated by Defendants, but fails to specify any other tort or allege any facts in support thereof.  Accordingly, Plaintiff's false imprisonment claim and claims regarding any other state law torts should be dismissed.

### K. Compensatory and Punitive Damages

Defendants contend that Plaintiff's claims for compensatory and punitive damages are barred by the PLRA, in the absence of a physical injury. The PLRA provides that a prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997(e); *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007) (citing *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir.2002)). The PLRA does not preclude an award of nominal damages if a plaintiff establishes the violation of a constitutional right. *Smith*, 502 F.3d at 1271 (citing *Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). In *Smith*, the Court held that a prisoner who alleged violations of the Religious Land Use and Institutionalized Persons Act due to the burden placed upon

his religious exercise, but no physical harm, was limited by the PLRA to seeking only nominal damages (in addition to injunctive relief).

In this case, Plaintiff has alleged no physical injury in connection with any of his claims, and he is therefore barred by the PLRA from seeking compensatory or punitive damages. *See id.*  Therefore, Plaintiff's claims for compensatory and punitive damages should be dismissed.

**L. Injunctive Relief**

Lastly, Defendants argue that Plaintiff's claims for injunctive relief should be denied.  In his complaint, Plaintiff requests a preliminary and permanent injunction prohibiting future disciplinary confinement.  (Doc. 9 at 13.)  First, to the extent that Plaintiff moves for a preliminary injunction against Defendants, he would have to show (1) a substantial likelihood of success on the merits of his claim; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

Plaintiff's request for injunctive relief is devoid of any facts that would establish the requisite elements to obtain a preliminary injunction.  Plaintiff's failure to exhaust his administrative remedies with respect to a request for an injunction, coupled with his failure to allege facts necessary to state a claim are sufficient to establish a substantial likelihood of failure on the merits of his claim.  Additionally, Plaintiff has failed to allege

facts that he would suffer irreparable injury without an injunction.  The DR and 54 day confinement, which are the bases of this action, were completed and served more than a year before Plaintiff filed his Second Amended Complaint.  (Doc. 9.)  His statements that he would continue to be harmed and suffer emotional injury without an injunction are conclusory and fail to establish irreparable injury.  *See Siegel*, 234 F.3d at 1176; (Doc. 9 at 11.)  Accordingly, Plaintiff's requests for preliminary and permanent injunctive relief have no merit.

## IV.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 18) should be **GRANTED**, all pending motions terminated, and the case closed.

**IN CHAMBERS** this 11th day of June 2015.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**